**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
CLEAR BLUE WATER, LLC

               Appellant,

      -against-

OYSTER BAY MANAGEMENT CO., LLC

             Appellee.
----------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
11-cv-04756 (ADS)

<u>**APPEARANCES:**</u>

**Lester & Associates, P.C.**
*Attorneys for the Appellant*
600 Old Country Road
Suite 229
Garden City, NY 11530
     By: Roy J. Lester, Esq., Of Counsel

**Egan & Golden, LLP**
*Attorneys for the Appellee*
475 East Main Street, Suite 114
Patchogue, NY 11772
     By:  Brian T. Egan, Esq., Of Counsel

**Lewis W. Siegel, Esq.**
*Attorney for the Appellee*
355 Lexington Avenue
New York, NY 10017

**SPATT, District Judge**.

     The Appellant has commenced the present appeal from a judgment of a bankruptcy court

on the basis that the court's dismissal of the Debtor's Chapter 11 bankruptcy petition was clearly

erroneous.  For the reasons set forth below, the Court finds that the bankruptcy court's

determination was not clearly erroneous and thus the Court affirms the dismissal.

1

# I. BACKGROUND

On May 10, 2011, the Debtor, Clear Blue Water LLC (the "Debtor" or "CBW"), filed a Chapter 11 Voluntary Petition (the "Petition") for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Eastern District Court of New York (the "Bankruptcy Court"). The Petition was filed by its current managing member, Paul Katsaros, with the intent to reorganize the Debtor. The case was assigned to United States Bankruptcy Judge Robert E. Grossman.

The Debtor manages real property. At the time of the Petition, the Debtor owned three properties: 53-55 Main Street, Cold Spring Harbor, New York (the "Cold Spring Harbor Property"); 263 Sumpter Street, Brooklyn, New York (the "Brooklyn Property"); and 133-43 83rd Street, Ozone Park, New York (the "Queens Property"). However, the previous dismissal and the present appeal largely concern only the Cold Spring Harbor Property.

CBW borrowed $1,087,000 from Washington Mutual Bank in 2008 purportedly to purchase the Cold Spring Harbor Property, which was secured by a mortgage on the property. The Appellee, Oyster Bay Management Co., LLC ("OBM") is the assignee of the note and mortgage secured by CBW's Cold Spring Harbor Property, which was transferred from Washington Mutual Bank, the initial holder of the mortgage. There is no question that the mortgage application made to the bank was in fact fraudulent. (Aug. 1, 2011 Hearing Tr. ("Tr.") at 11:9–16.) In this regard, OBM contends that in the process of obtaining the loan from Washington Mutual Bank, there were several misrepresentations made, including the ownership of and the price paid for the Cold Spring Harbor Property. There is also no dispute that several individuals were indicted for forging documents; presenting fraudulent title reports which omitted ownership of properties and existing mortgages; withholding the filing of deeds and

mortgages in order to induce other parties to extend additional credit; and representing that they were owners of property which they did not own. What is presently being disputed is whether the Debtor now must face the consequences of these fraudulent acts.

The Debtor's Counsel indicated at a hearing on August 1, 2011 before the Bankruptcy Court that an individual named Brandon Lisi owned CBW at the time the fraudulent mortgage application was made. (See Tr. at 10:23–11:2.) On July 29, 2011, Lisi pled guilty to three counts of Grand Larceny in Suffolk County Court. As part of his guilty plea, Lisi admitted to stealing U.S. currency from Washington Mutual Bank, the value of which exceeded more than one million dollars, relating to the Cold Spring Harbor Property. (See Appelle Brief, Ex. A.) At the time of the dismissal of the Chapter 11 Petition on August 1, 2011, the Bankruptcy Court did not have the opportunity to view the transcript of Lisi's guilty plea.

This Court was provided with a copy of the transcript and takes judicial notice of the same. See United States v. Alexander, 123 Fed. App'x 444, 446 (2d Cir. 2005) ("Pursuant to Federal Rule of Evidence 201, we may take judicial notice of this [conviction] as it is 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" (citing Fed. R. Evid. 201(b)(2)); Schwartz v. Capital Liquidators, Inc., 984 F.2d 53, 54 (2d Cir. 1993) (taking judicial notice of a plaintiff's criminal conviction for making false declarations in his trial testimony); Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) (holding that it is appropriate to take judicial notice of state court guilty pleas on appeal). Nevertheless, neither party disputed that Lisi had pled guilty to a crime involving the loan obtained from Washington Mutual Bank with respect to the Cold Spring Harbor Property. At the hearing, the following exchange took place:

> MR. SIEGEL: Your Honor, just a few things with respect to the innocence of Mr. Lisi. What he pled guilty to, whether it was mortgage fraud or

> grand larceny dealt with this specific property. He's clearly pled
> guilty to being involved in that fraud which –

THE COURT: This property?

MR. SIEGEL: This property.

THE COURT: Why did he plead guilty? He didn't know anything about it?

MR. SIEGEL: I have been asking myself that same question, Judge. And it does
baffle me but he did and he pled guilty, I believe three times.

THE COURT: So Mr. Lisi pled guilty to fraud having to do with the particular
debtor that I am involved with, with this property.
. . .

MR. SIEGEL: But he pled guilty to a crime getting the mortgage or getting the
money from the mortgage with this property.

THE COURT: Why did he plead if he didn't know anything about it? Do you
know?

MR. LESTER: Judge, I said the same thing.

(Tr. at 32:22–33:20.)

At the same hearing in front of the Bankruptcy court on August 1, 2011, Debtor's counsel

argued that the original mortgage was entered into not by Lisi, the asserted "owner" of CBW, but

by Melissa Lanzilotta. (Id. at 7–8.); (but see id. at 10 ("Mr. Lisi claimed she was the owner at

that time.").) The Loan Application to Washington Mutual Bank for the Cold Spring Harbor

Property, dated October 23, 2007, was signed and entered into by and between Lanzilotta and

another individual named Jason Higgins, as the alleged managing members of CBW. The Loan

Application listed Lanzilotta as owning ninety-five percent of the Debtor and Higgins owning

five percent. The Operating Agreement for the Cold Spring Harbor Property that was also

presented to the bank, dated June 28, 2006, was signed and entered into by and between

Lanzilotta and Higgins, as alleged members of CBW. However, according to the Debtor, the

4

Operating Agreement is not legitimate and was not authorized by CBW. Moreover, in or about November 2010, Higgins testified that the signature on the Operating Agreement was not his. Therefore, the Debtor's position is that Lanzilotta procured the loan from Washington Mutual Bank in CBW's name, but was unauthorized to do so because Lisi was the real owner of the Debtor at the time of the mortgage application. At the time of the hearing, Lanzilotta had pled guilty to crime of fraud relating to the Washington Mutual Bank mortgage. (See Tr. at 11:3-6 ("THE COURT: So that [means] that the mortgage application and the loan application was fraudulent. MR. LESTER: Yes, sir. That's what Melissa Lanzilotta pled guilty to."); id. at 25:8-9 ("the argument I've said, Judge, is that Ms. Melissa Lanzilotta admitted that she committed a crime. She admitted that.").)

Although there is no dispute that some kind of mortgage fraud took place, in December 2008, the Suffolk County Supreme Court granted judgment to OBM in connection with the mortgage and authorized a foreclosure sale of the Cold Spring Harbor Property, based upon CBW's failure to make any payments on the mortgage for almost three years. The amount due to OBM under the judgment is more than $1,600,000. OBM is the Debtor's major secured creditor. However, on May 10, 2011, just hours before the foreclosure sale on the Cold Spring Harbor Property was to be held, CBW filed a Chapter 11 petition with the Bankruptcy Court through Kastaros, its current managing member and owner.

Katsaros claims that he currently owns one-hundred percent of the CBW's interests. However, the chain of ownership is not entirely clear. It appears that the entire ownership interest of the Debtor was originally held by one Elizabeth Dente. In or about early April 2008, Dente supposedly transferred her entire ownership interest in the company to Brandon Lisi. Then, on or about August 18, 2010, Lisi, as managing member and sole owner of the Debtor,

allegedly transferred his entire interest in CBW to Katsaros, in satisfaction of approximately $100,000 owed to Katsaros by Lisi. At a deposition, Katsaros described the circumstances surrounding his acquisition of CBW. He testified as follows: (1) he met Lisi sometime in 2010, although he could not remember precisely when; (2) he lent Lisi approximately $100,000 over a few months, but could not recall when the loans were made; (3) he made these loans to Lisi with the knowledge that Lisi was under indictment; (4) the loans were made in cash in varying amounts from about $2,000 to about $5,000, from money that Katsaros "had around" from savings and cash loans he received from other parties; (5) he made the loans to Lisi without receiving any receipts or notes; (6) he did not know the exact amount loaned or keep any records as to the loaned amounts; and (7) he had no record of amounts he had borrowed in cash from others to make the loans to Lisi. Most importantly, Katsaros had no documentation to support the purported transfer of CBW from Lisi to him.

In the course of the bankruptcy proceeding, the Debtor was required to produce documents relating to: its Operating Agreement; the ownership of its interests; its dealings with Lisi and Dente; a proposed Chapter 11 plan; and any plans for future business. However, the only documents that the Debtor produced were blank standard forms for setting up an LLC. The Debtor has no income or assets to meet its current expenses including the payment of taxes and insurance on the properties, and no employees, tenants, or business to reorganize.

On July 1, 2011, the current Appellee, OBM, filed a motion with the Bankruptcy Court to dismiss the Chapter 11 case or, in the alternative, for relief from the automatic stay to permit OBM to conduct the scheduled foreclosure sale of the Cold Spring Harbor Property. OBM claimed that Katsaros was not the actual owner of the Cold Spring Harbor Property and thus could not file a Chapter 11 Bankruptcy petition seeking to reorganize with respect to that

property.  Moreover, OBM alleged that CBW's debt was tainted with fraud.  CBW opposed the motion and argued that the Petition was properly filed by Katsaros, who had a one-hundred percent ownership interest in CBW.  In particular, CBW asserted that the Petition had been filed in good faith with intent to reorganize, and that adequate post-petition mortgage payments were being made.

As stated above, on August 1, 2011, Judge Grossman held a hearing in connection with the OBM motion.  Based upon his review of the papers and the oral arguments of counsel, the Bankruptcy Court granted the OBM motion and dismissed the case without prejudice pursuant to 11 U.S.C. § 1112(b).   In particular, the Bankruptcy Court found that the Debtor had committed fraud in connection with the mortgage at its issuing date and thus had come to the Bankruptcy Court with unclean hands.  The Bankruptcy Court stated, "this debtor was born, lived, operated, and now will die of fraud.  It was created in a fraud.  It existed in fraud.  It's now trying to come back to life with some form of fraud.  And it's not happening in this court."  (Tr. at 37:15–18.)  On August 4, 2011, the Bankruptcy Court entered an order dismissing the Chapter 11 Bankruptcy Case pursuant to 11 U.S.C. § 1112(b).  (See Docket Entry No. 1-35.)  Although the Bankruptcy Court expressly struck the "bad faith" language in the proposed order, this conduct nevertheless appears to be the basis of the court's dismissal.

On August 15, 2011, the Debtor filed the present appeal to this Court.  According to the Appellant, the Bankruptcy Court's dismissal of the case pursuant to 11 U.S.C. § 1112(b) was clearly erroneous, mainly because: (1) it did not have any evidentiary basis for finding that the Debtor itself engaged in fraud, and relatedly did not hold an evidentiary hearing on the issue of the alleged bad faith of the Debtor; (2) it improperly blamed the Debtor for fraud that was

committed by prior members of the LLC; and (3) the current owner of the Debtor has clean

hands and his troublesome chain of ownership is irrelevant.

## II.  DISCUSSION

### A.  Legal Standard of Review on a Bankruptcy Appeal

Federal district courts have jurisdiction to hear appeals from final judgments, orders, and

decrees of bankruptcy judges.  Fed. R. Bankr. P. 8013.  The standard of review in a bankruptcy

appeal is plenary.  In re MarketXT Holdings Corp., 346 Fed App'x 744, 745 (2d Cir. 2009).  The

reviewing court "review[s] the bankruptcy court decision independently, accepting its factual

findings unless clearly erroneous, but reviewing its conclusions of law de novo."  Ball v. A.O.

Smith Corp., 451 F.3d 66, 69 (2d Cir. 2006).  With respect to a bankruptcy court's dismissal of a

Chapter 11 case, this is a matter within the discretion of the bankruptcy court.  See 11 U.S.C. §

1112.  Thus, as a general matter, this discretion will not be set aside by a district court unless

there was an abuse of that discretion.  See Hall v. Vance, 887 F.2d 1041, 1044 (10th Cir. 1989);

Adirondack Mines, Inc. v. U.S. Trustee, No. 10 Civ. 411, 2010 WL 4781529, at *2 (N.D.N.Y.

Nov. 16, 2010).

However, within the specific context of a bad faith dismissal in a bankruptcy case, this

court must "review the bankruptcy court's ultimate finding that the filing was not in good faith as

one of fact subject to the clearly erroneous standard."  Carolin Corp. v. Miller, 886 F.2d 693, 702

(4th Cir. 1989); see In re Premier Auto. Services, Inc., 492 F.3d 274 (4th Cir. 2007) (reviewing

bankruptcy court's ultimate finding that filing was not in good faith as one of fact subject to

"clearly erroneous" standard); In re Hall, Bayoutree Assocs., Ltd., 939 F.2d 802 (9th Cir. 1991)

(noting that question of whether case was filed in bad faith is factual one); U.S. Fidelity & Guar.

Co. v. DJF Realty & Suppliers, Inc., 58 B.R. 1008 (Bankr. N.D.N.Y. 1986) (reviewing

bankruptcy court's finding that filing was not in good faith, warranting dismissal, as one of fact

subject to clearly erroneous standard).  "The Bankruptcy Court's determination that a bankruptcy

petition was or was not filed in good faith is a purely factual finding evaluated under the clearly

erroneous standard of review."  <u>Allen v. Wells Fargo Bank Minn., N.A.</u>, 334 B.R. 746, 752

(Bankr. D.D.C. 2005).

**B.  <u>As to Whether There Was Cause to Dismiss the Debtor's Chapter 11 Case Pursuant to
11 U.S.C. § 1112(b)</u>**

**1.  Dismissal of a Chapter 11 Petition for Lack of Good Faith**

11 U.S.C. § 1112(b) is a part of Chapter 11, the object of which "is to permit a potentially

viable debtor to restructure and emerge from bankruptcy protection."  <u>Kings Terrace Nursing</u>

<u>Home and Health Related Facility v. N.Y. State Dep't of Social Servs. (In re Kings Terrace</u>

<u>Nursing Home and Health Related Facility)</u>, 184 B.R. 200, 203 (Bankr. S.D.N.Y. 1995).  Section

1112 is captioned "Conversion or Dismissal."  In particular, Section 1112(b) provides in

pertinent part that "on request of a party in interest or the United States trustee" the bankruptcy

court "may dismiss a case under this chapter . . . for cause."  The concept in the statute is

illustrated by a list of specified occurrences, such as gross mismanagement of the estate or failure

to comply with an order of the court.  "As the Historical and Statutory Notes appearing after 11

U.S.C.A. § 1112 (West 1993) at 473–74 observe, '[t]his list is not exhaustive.  The court will be

able to consider other factors as they arise, and to use its equitable powers to reach an

appropriate result in individual cases.'"  <u>In re Casse</u>, 198 F.3d 327, 334 (2d Cir. 1999); <u>see In re</u>

<u>C-TC 9th Ave. P'ship</u>, 113 F.3d 1304, 1310 (2d Cir. 1997) ("It is important to note that this list

is illustrative, not exhaustive.").  In addition, Chapter 11 provides:

> The court may issue any order, process, or judgment that is necessary or
> appropriate to carry out the provisions of this title.  No provision of this title
> providing for the raising of an issue by a party in interest shall be construed to

preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

Thus, while 11 U.S.C. § 1112(b) permits dismissal of a reorganization "for cause", this term is not defined in the statute so to afford flexibility to bankruptcy courts. See In re New Rochelle Tele. Corp., 397 B.R. 633 (Bankr. E.D.N.Y. 2008). A bankruptcy court has discretion to determine what additional circumstances, not enumerated in the statute, may constitute cause.

A prime example of the type of consideration not explicit in the statute but nevertheless a proper concern for a bankruptcy court, is good faith. It is not precisely clear whether a dismissal on the ground of good faith is "for cause" under section 1112(b) or if it occupies its own distinctive niche in bankruptcy law. See Collier, § 1112.079[1]; § 1112.07[2] ("While the focus of good faith upon the subjective intent of the debtor may distinguish lack of good faith as a basis for dismissal from most of the causes enumerated in section 1112(b)(4), courts have often used lack of good faith as a "cause" for relief under section 1112(b)."). Cf. In re Hammersmith Trust, LLC, 243 B.R. 795, 800 (Bankr. M.D. Fla. 1999) ("It is now well established that evidence of an intent to abuse or misuse the reorganization process is sufficient 'cause' to warrant the dismissal under 1112(b) of the Code.").

In any event, it is beyond cavil that a dismissal for lack of good faith is theoretically proper. See, e.g., In re 347 Linden LLC, Nos. 11 Civ. 1990 and 11 Civ. 2202, 2011 WL 2971496, at *4 (E.D.N.Y. July 20, 2011) ("The bankruptcy court may dismiss a Chapter 11 [petition] for any reason cognizable to the equity power and conscience of the court as constituting an abuse of the bankruptcy reorganization process.") (internal citations omitted); In re Victory Constr., 9 B.R. at 549, 558 (Bankr. Cal. 1981) ("the perimeters of [the Code] mark the

borderline between fulfillment and perversion; between accomplishing the objectives of rehabilitation and reorganization, and the use of these statutory provisions to destroy and undermine the legitimate rights and interests of those intended to benefit by this statutory policy. That borderline is patrolled by courts of equity, armed with the doctrine of 'good faith': the requirement that those who invoke the reorganization or rehabilitation provisions of the bankruptcy law must do so in a manner consistent with the aims and objectives of bankruptcy philosophy and policy must, in short, do so in 'good faith.'") (overruled on other grounds); Collier §1112.07 ("No provision of the Code expressly authorizes a court to dismiss a case on [the] ground [of good faith]. Nevertheless, even in the absence of express statutory authorization, the requirement of good faith has been held to be an implicit condition to the filing and maintenance of a bankruptcy case for over a century."). "[C]ourts which have considered whether such a requirement [of good faith] still exists have uniformly held that a bankruptcy court, sitting as a court of equity, possesses the inherent power to determine whether a debtor has improperly invoked its jurisdiction by coming into court in bad faith." In re Gucci, 174 B.R. 401, 411 (Bankr. S.D.N.Y. 1994) (quoting In re Coastal Nursing Center, Inc., 164 B.R. 788, 793 (Bankr. S.D. Ga. 1993)).

The Supreme Court aptly summarized a bankruptcy court's responsibility to enforce a standard of good faith when it stated:

> "A court of equity may in its discretion in the exercise of the jurisdiction committed to it grant or deny relief upon performance of a condition which will safeguard the public interest." . . . These principles are a part of the control which the court has over the whole process of formulation and approval of plans of composition or reorganization . . . .

Am. United Mut. Life Ins. Co. v. City of Avon Park, 311 U.S. 138, 145, 61 S. Ct. 157, 161–62, 85 L. Ed. 91 (1940) (quoting S.E.C. v. U.S. Realty & Improvement Co., 310 U.S. 434, 455, 60 S.

Ct. 1044, 1053, 84 L. Ed. 1293 (1940)).  This standard of good faith "protects the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons (*i.e.*, avoidance of liens, discharge of debts, marshaling and turnover of assets) available only to those debtors and creditors with 'clean hands.'"  In re Little Creek Dev. Co., 779 F.2d 1068, 1072 (5th Cir. 1986).  See C-TC 9th Ave., 113 F.3d at 1310 ("The good faith standard applied to bankruptcy petitions furthers the balancing process between the interests of debtors and creditors which characterizes so many provisions of the bankruptcy laws and is necessary to legitimize the delay and costs imposed upon parties to a bankruptcy.") (internal citations omitted).

Therefore, a large number of courts have found a lack of good faith or unclean hands to constitute sufficient "cause" to dismiss a bankruptcy case.  See, e.g., In re C-TC 9th Ave. P'ship, 113 F.3d 1304, 1311 (2d Cir. 1997); Phoenix Piccadilly, Ltd. v. Life Ins. Co. of Va. (In re Phoenix Piccadilly, Ltd.), 849 F.2d 1393, 1394-95 (11th Cir. 1988); Pleasant Pointe Apts., Ltd. v. Ky. Hous. Corp., 139 B.R. 828 (W.D. Ky. 1992); In re Julian, No. 96 Civ. 5068, 2012 WL 506573, at *4 (Bankr. D. Conn. Feb. 15, 2012).  Typically a dismissal for cause, including a lack of good faith, is initiated by a motion.  However, many courts have held that a court may *sua sponte* dismiss a case to "prevent an abuse" of process.  See In re 183 Lorraine Street Assocs., 198 B.R. 16, 32 (Bankr. E.D.N.Y. 1996) (dismissing *sua sponte* to prevent misuse of the bankruptcy process).

"The lack of good faith in maintaining the case must rest on the totality of the circumstances, and involves finding an intent to abuse the judicial process, and the purpose of the reorganization process."  In re Coffee Cupboard, Inc., 119 B.R. 14, 18 (Bankr. E.D.N.Y. 1990).  A bankruptcy court has wide discretion to determine if such cause exists and how to ultimately dispose of the case.  However, this discretion should be "legal discretion, rather than

one merely at will," or one that only expresses the court's own notion of equitable principles.  In re Gucci, 174 B.R. 401, 410 (Bankr. S.D.N.Y. 1994).  Discretion which is premised on the wrong criteria, or that disregards well settled principles is said to transcend "the allowable bounds" and is reversible.  See S.E.C. v. U.S. Realty and Improvement Co., 310 U.S. 434, 457, 60 S. Ct. 1044, 1054, 84 L. Ed. 1293 (1940); In re Int'l Airport Inn P'ship, 517 F.2d 510 (9th Cir. 1975); In re Barchris Const. Co., 223 F. Supp. 229 (S.D.N.Y. 1963).

When a motion is filed to dismiss a case for cause, the moving party carries the burden of demonstrating that such cause exists by a preponderance of the evidence.  See In re Woodbrook Assocs., 19 F.3d 312, 317 (7th Cir. 1994) ("Where a motion to dismiss for cause is opposed, the movant bears the burden of proving by a preponderance of the evidence that cause exists for dismissal of the debtor's bankruptcy case.").  However, if the issue is whether the petition was filed in good faith, the burden shifts to the debtor to demonstrate that the petition was filed in good faith.  In re Syndicom Corp., 268 B.R. 26, 49 (Bankr. S.D.N.Y. 2001); Collier, §1112.04[4].  As set forth above, a bankruptcy court's factual conclusions of bad faith are reviewed under the clearly erroneous standard.  In re C-TC 9th Avenue P'ship, 113 F.3d at 1312 n.6; U.S. Lines (S.A.), Inc. v. United States ( In re McLean Indus., Inc.), 30 F.3d 385, 387 (2d Cir. 1994).

### 2.  Whether the Bankruptcy Court's Dismissal for Cause Was Clearly Erroneous

"Generally, the facts surrounding good faith will be determined by circumstantial evidence.  It is unlikely that a debtor will ever acknowledge its own bad faith; therefore, one will reach conclusions about the party's intent from the totality of the circumstances surrounding the filing of the case."  In re Roxy Real Estate Co., 170 B.R. 571, 573 (Bankr. E.D. Pa. 1993); In re Marsch, 36 F.3d 825, 828 (9th Cir. 1994) ("The existence of good faith depends on an amalgam

of factors and not upon a specific fact.") (internal quotation marks omitted); In re Little Creek Dev Co., 779 F.2d at 1072 ("Determining whether the debtor's filing for relief is in good faith depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities."). "The existence of 'bad faith' depends not on any one specific factor but on a combination of factors determined after careful examination of the facts of the particular debtor's case." In re 68 West 127 Street, LLC, 285 B.R. 838, 844 (Bankr. S.D.N.Y. 2002) (citing In re Shar, 253 B.R. 621, 629 (Bankr. D.N.J. 1999).

There are several situations in which bad faith dismissals often take place, including those involving (1) the filing of false or misleading information; (2) the persistent failure to comply with court orders, rules, or procedures; (3) the use of the bankruptcy process to escape familial obligations; (4) the secretion of property and other efforts to avoid the disclosure of assets; (5) the use of bankruptcy as a vehicle to resolve disputes solely between equity participants; and (6) the "new debtor syndrome", in which property is transferred solely for the purpose of commencing a bankruptcy case. None of these factual circumstances are present here.

Moreover, as opposed to focusing on the Debtor's prospects of reorganization, which is often the premise of a "for cause" dismissal and touched upon by both parties in their briefing, the Bankruptcy Court appeared to hinge its decision on the standard of good faith that "focuses directly on the subjective intentions of the debtor and proper use of the bankruptcy system as a general system of equity[, which] is designed to prevent 'abuse of the bankruptcy process, or the rights of others, invov[ing] conduct or situations only peripherally related to the economic interplay between the debtor and the creditor community.'" Collier, § 1112.07[1]-49 (quoting In re Victory Constr. Co., Inc., 9 B.R. 549, 559 (Bankr. C.D. Cal. 1981)); see In re Hammersmith

14

Trust, LLC, 243 B.R. 795, 800 (Bankr. M.D. Fla. 1999) ("the Petition must be filed with honest intent and genuine desire to utilize the provisions of the Code to reorganize and not merely as a device to serve some sinister or unworthy purpose and the courts should not and cannot tolerate such misuse of the reorganization process.").

Therefore, although Judge Grossman referred at the hearing to certain traditional factors underlying a dismissal for lack of good faith and the parties mention these factors in their briefing — namely, that the debtor has only one asset or that the debtor has little or no cash — the Court will not address these arguments. Cf. Phoenix Piccadilly, 849 F.2d at 1394–1395 (laying out the traditional factors that evidence a bad faith filing). While many of these traditional factors are applicable to the present case, they do not appear to have formed the basis of the Bankruptcy Court's decision and thus are not relevant to this appeal.

Instead, this Court is faced with a rather unique set of circumstances on appeal. The parties have not set forth, and the Court has not uncovered, any previous cases in which a bankruptcy court dismissed a Chapter 11 petition on the ground of bad faith due to the fraudulent procurement of a mortgage loan. Nevertheless, based upon the doctrine of good faith that generally underpins bankruptcy law, and other analogous situations where courts have affirmed factual findings of bad faith, the Court does not find Judge Grossman's determination based upon the totality of the circumstances to be clearly erroneous.

The premise of the good faith standard is that bankruptcy relief should generally be limited only to the "honest but unfortunate debtor." Brown v. Felsen, 442 U.S. 127, 128, 99 S. Ct. 2205, 60 L. Ed. 2d 767 (1979) (quoting Local Loan Co. v. Hunt, 292 U.S. 234, 244, 54 S. Ct. 695, 78 L. Ed. 1230 (1934)). "Congress has never intended that bankruptcy be a refuge for the irresponsible, unscrupulous or cunning individual." In re Rognstad, 121 B.R. 45, 50 (Bankr. D.

15

Haw. 1990); see Johnson v. Vanguard Holding Corp. (In re Johnson), 708 F.2d 865, 868 (2d Cir. 1983) ("'Good Faith' while not defined by statute or legislative history, . . . certainly does, however, require 'honesty of intention' . . ."). In the Court's view, there was sufficient circumstantial evidence before the Bankruptcy Court to determine that CBW was not an "honest but unfortunate debtor"; but rather, was a debtor whose principals or agents had, in some capacity, engaged in fraudulent conduct. As stated by Judge Grossman on the record:

> What I know the truth is, that this loan and the issue in front of me as I've said before, was created, nurtured, born and existed at [sic] a fraudulent conduct. Ere by, Ms. Lanzilotta who has either been convicted or pled guilty, Mr. Lisi, who has been either convicted or pled guilty, Mr. Dente, who was convicted or pled guilty, all of mortgage fraud, grand larceny, and they are still in front of the court system, I assume. So this court will not use its equitable powers to grant any relief to a debtor who comes in here with that history. That's what I am saying. Whether you want to look at it under 105, whether you want to look at it under 1112(b), whether you wanted to look at it as a Christmas tree, I don't know.

(Tr at 40:18–41:5.) In particular, the Bankruptcy Court's finding of fraud in connection with the relevant debt is based upon the indictments and guilty pleas of Melissa Lanzilotta and Brandon Lisi.

First, the documents presented to the Court demonstrate that Lanzilotta was a member of CBW and had authority to make the mortgage application on the company's behalf. The Debtor's counsel recognized at the hearing that she had pled guilty to fraud in connection with the loan from Washington Mutual Bank. Thus, the Court was presented with sufficient proof on this basis alone to find that the relevant debt was procured fraudulently in the name of the Debtor. (See Tr. at 39:15-17) ("And you may argue all you want that it was a representative of the debtor but it was the debtor that signed it. It was the principle [sic] of the debtor who signed it.").)

The Debtor now claims, as it did before the Bankruptcy Court, that the Debtor should not be tainted by the prior bad acts of Lanzilotta because when she engaged in fraud, she did so in an unauthorized manner. However, this theory goes against the weight of the evidence that was placed before the Court. As stated by Judge Grossman at the hearing:

> Melissa Lanzilotta in — I think in 2006, is listed on the operating and the LLC agreement as the managing member. She executed documents as the managing member. The bank loaned her money as the managing member. You're coming in now with a story that oh, no, she wasn't the managing member. Mr. Lisi, who is a convicted thief got defrauded by her.
>
> . . . .
>
> Are you telling me she testified she defrauded Mr. Lisi? That's what you're arguing. Unbeknownst to Mr. Lisi, this person in his office, took control of an asset, encouraged, encountered money, used it to buy a property and then — is that what I am supposed to believe here, that he didn't have any idea what she was doing?

(Id. at 30:4–20.)

Furthermore, the Debtor's counsel argues that it was Lisi who owned the company at the time of the fraud and thus there is no possibility that Lanzilotta's actions could bind the company. Even if this is true, it is not relevant as to whether the fraud was perpetrated on behalf of the Debtor by Lanzilotta or Lisi because Lisi was also convicted of crimes relating to the Washington Mutual Bank mortgage. (See Tr. at 12 ("Mr. Lisi's going to jail. The argument that Mr. Lisi did anything correct after this is not going to get any place. He's going to jail.").) As Judge Grossman stated,

> all that is secondary to the fact that this court believes that to preserve the integrity of the Court and the process, a debtor needs to come into court with clean hands. The argument this court's being left to choose is whether one convicted felon is more correct than another convicted felon having to do with the very essence of this case, having been presented that, the Court will not make the decision of which felon is better than the other one and therefore, the case will be dismissed.

(See Tr. at 50:4–12.)  It is clear that CBW's agents perpetrated the fraud; CBW was the recipient of the fraud; and CBW was the debtor party before the Bankruptcy Court.

Therefore, on the basis of the criminal indictments, convictions, and/or pleas presented to the Court as to the individuals connected with the Debtor related to the Washington Mutual Bank mortgage, the Bankruptcy Court was well within its discretion to "preserve the integrity of the Court and the process," as "a debtor needs to come into court with clean hands."  (Id. at 50.)  As Judge Feller noted in Island Helicopters:

> Bad faith is not a concept that lends itself to precise definition.  See In re Charfoos, 979 F.2d [390 (6th Cir.1992)] at 393 ("[Bad] faith is an amorphous notion . . . .") (quoting In re Okoreeh–Baah, 836 F.2d 1030 (6th Cir. 1988)).  This court "may consider any factors which evidence 'an intent to abuse the judicial process and the purposes of the reorganization provisions' . . .

211 B.R. at 462.

Moreover, this case presents circumstances that are somewhat analogous to cases where courts have found the standard of good faith to be lacking when bankruptcy was used as a vehicle to defraud others.  See, e.g., In re Coastal Cable T.V., Inc., 709 F.2d 762, 764, 765 (1st Cir. 1983) ("Another such principle prohibits the use of the bankruptcy court, a court of equity, to further a fraudulent purpose. . . . We fear that one or more of these basic principles may have been violated for the following reasons: . . . there are sufficient allegations of fraud in this case, and they are closely enough related to the relevant debt and in this instance to the court's jurisdiction, to warrant determining the underlying facts and their relation to the question.").

Here, although three properties were involved, the driving force behind the Chapter 11 filing was the Cold Spring Harbor Property, as evidenced by the Debtor's choice to dismiss the entire case rather than proceed with the petition without this property.  There were more than sufficient allegations and proof of fraud as related to that relevant debt.  Thus, with reasonable

18

certainty, the Chapter 11 petition could merely be a vehicle for the Debtor to further that fraud. Consequently, the Court rejects the Debtor's argument that the Bankruptcy Court confused the alleged fraud in obtaining this particular mortgage with alleged fraud or bad faith in filing the petition.

The Appellant makes several other arguments as to why the decision by the Bankruptcy Court was clearly erroneous. However, the Court finds that each of the Debtor's contentions is ultimately unavailing.

First, CBW argues that the Appellee did not meet its burden of a strong evidentiary showing before the Bankruptcy Court to demonstrate that there was fraud as to the Washington Mutual Bank mortgage related to the Cold Spring Harbor Property. However, as set forth above, it was not OBM's burden to meet. When the issue is whether the petition was filed in good faith, the burden shifts to the debtor. In re Syndicom Corp., 268 B.R. 26, 49 (Bankr. S.D.N.Y. 2001); Collier, §1112.04[4].

Second, CBW points out that the Court did not hold an evidentiary hearing on the issue of whether the Debtor committed fraud. Consequently, CBW insists that any finding of a lack of good faith to dismiss the Chapter 11 case is necessarily erroneous. However, for a bankruptcy court to dismiss a case on account of bad faith or unclean hands, there is no requirement in the Code or applicable case law that the court must hold an evidentiary hearing. Rather, the Code only requires notice and a hearing. See 11 U.S.C. § 1112(b) (providing for the dismissal of a debtor's case for cause "after notice and a hearing."). Here, the Debtor had sufficient notice of the issue of good faith once OBM filed its motion to dismiss on July 5, 2011. (See OBM Motion, at 21 ("Chapter 11 is intended to allow an honest debtor to reorganize. That is clearly not what is being attempted here.").) The Debtor had an opportunity to submit opposition to the

Bankruptcy Court. Thereafter, on August 1, 2011, Judge Grossman held a hearing to address these precise issues. Thus, before the Bankruptcy Court decided the issue of bad faith, CBW was presented with notice of the claim and an opportunity to oppose it.

Similarly, in In re C-TC 9th Avenue Partnership, 113 F.3d 1304 (2d Cir. 1997), the debtor appealed a determination by the bankruptcy court that the company had filed its Chapter 11 petition in bad faith. In particular, C-TC argued that it was denied due process of law when the bankruptcy court decided the bad faith issue without a formal evidentiary hearing. However, the Second Circuit rejected this argument:

> C-TC argues that due process mandates the holding of an evidentiary hearing before bad faith can be determined. But the "notice and hearing" required before a debtor's case may be dismissed is further defined by the statute as "mean[ing] after such notice as is appropriate under the particular circumstances, and such opportunity for a hearing as is appropriate under the particular circumstances." 11 U.S.C. § 102(1)(A). These rather nebulous standards must lead to problematic interpretations. However, the case law has been helpful in clarifying the standards.
>
> When the record is sufficiently well developed to allow the bankruptcy court to draw the necessary inferences to dismiss a Chapter 11 case for cause, the bankruptcy court may do so.

113 F.3d at 1312; See Collier 1112.04[4] ("the court may rely on the record or, if insufficient, direct the submission of evidence."); In re Bartle, 560, F.3d 724, 729 (7th Cir. 2009) ("And even if an interested party does demand a hearing, when the parties have otherwise placed the relevant facts before the court, or the court by virtue of having presided over the case is already familiar with those facts, a formal, evidentiary hearing on the motion to dismiss or convert the bankruptcy is not necessary.").

Here, there were sufficient facts in the record for the Bankruptcy Court to draw the necessary inferences to dismiss the Chapter 11 case for lack of good faith. Furthermore, there is no indication that the Debtor requested an evidentiary hearing as to the fraudulent conduct of

CBW. "A hearing is of course not required when no one demands it." Id.; see Morlan v. Univ. Guar. Life Ins. Co., 298 F.3d 609, 618 (7th Cir. 2002) ("the Bankruptcy Code is explicit in defining 'after notice and a hearing' as 'authorizing an act without an actual hearing if such notice is given properly' *and* no interested party requests a hearing") (quoting 11 U.S.C. § 102(1)(B)).

Next, the Debtor makes an additional argument in its current appeal that was the core basis for the Debtor's position against dismissal in the Bankruptcy Court. Essentially, the Appellant argues that although there may have been prior bad acts by individuals that were associated with the Debtor, these fraudulent acts should not be imputed to CBW LLC. In other words, as there is no allegation that the present owner of CBW engaged in fraudulent conduct, the Debtor argues that the Bankruptcy Court erred in attributing to the Debtor and current management the past acts of other individuals.

As an initial matter, it was not necessary for the Bankruptcy Court to make a specific finding of bad faith as to the "current" owner/manager of the Debtor. The Appellant cites to In re The 1031 Tax Group, LLC, 374 B.R. 78, 86 (Bankr. S.D.N.Y. 2007), for the proposition that "a court's focus is on the debtor's current management, not the misdeeds of past management." However, the holding of 1031 Tax Group is more properly stated as follows: "the fact that the debtor's prior management might have been guilty of fraud, dishonesty, incompetence, or gross mismanagement does not necessarily provide grounds *for the appointment of a trustee under § 1104(a)(1)*, as long as a court is satisfied that the current management is free from the taint of prior management." Id. at 86 (emphasis added). Thus, the issue of prior management's bad deeds arose in the particular context of the appointment of a trustee for cause under Section 1104, and is not applicable to the instant case that arises within the framework of bad faith. In

fact, Katsaros was essentially irrelevant to the Court's finding of bad faith. As emphasized by Judge Grossman, it was the Debtor company that was before the Court, not Katsoras individually.

> THE COURT: How does a debtor come into court, make a motion. We're not talking about a corporation. We're talking about an LLC where the argument is I admit I defrauded the bank at the outset but the person who is trying to make it right really can't do that now because he's going to jail for a series of mortgage fraud and now the next guy in is saying I have it and why doesn't the bankruptcy court give me some recourse?

(Tr. at 16:14–22); (Id. at 24:24–25:3 ("The only thing in front of me today is whether or not this court should use its powers to grant relief or would grant relief to a party appearing in front of it, who knowingly and admittedly, the borrower, committed fraud. I'm not talking about the individual.").); See In re Hammersmith Trust, LLC, 243 B.R. 795, 800 (Bankr. M.D. Fla. 1999) ("While it might be contended as it is asserted by counsel for the Debtor that Winn was an individual and the Debtor is a corporation, this is merely a distinction without difference.").

In that same vein, it was not erroneous for the Court to disregard evidence of the Debtor's efforts under current management to repay its creditors, including adequate mortgage payments. While the Bankruptcy Court alluded to CBW's prospects for reorganization at the hearing, its decision was ultimately not based on this ground. Cf. In re C-TC 9 Ave. P'ship, 113 F.3d at 1311–12 (dismissing a case under § 1112(b) because of the absence of any likelihood of rehabilitation). The Bankruptcy Court focused its attention on the fraud related to the initial mortgage, and thus any consequent post-petition actions were not relevant. As aptly stated by Judge Grossman, "If I rob a bank and try to give the money back after I spend it, I'm okay?" (Tr. at 12:3–4.)

In addition, even if § 1104 is analogous to a bankruptcy court's discretionary findings under § 1112, the 1031 Tax Group court went on to say that "[a] court may consider both the

pre-and postpetition misconduct of the current management when making the determination that "cause" exists for the appointment of a trustee." The circumstances of Katsaros' procurement of CBW certainly lend credence to the finding of bad faith. Katsaros made hundreds of thousands of dollars in loans to Lisi in cash while Lisi was under indictment in varying amounts over time, with absolutely no documentation. In return, Lisi exchanged ownership of CBW with no documentation to support the purported transfer of interests. Thus, even if the Bankruptcy Court were to consider Katsaros' alleged "clean hands" as part of the relevant inquiry — which it properly did not — these facts do not tend to dispel an inference of bad faith. (See Tr. at 29:11–19 ("This entity is the entity that's in front of me. Whoever took ownership of it, took ownership knowingly of an entity that was in the midst of a nest of fraud, misapplication of funds, criminal behavior and a laundry list of things. And if you're telling me that the individual who came in and acquired that interest was so naïve that he had no idea who Mr. Lisi was, he had no idea any of this was going on, then I'll put him on the stand and he can testify to that.").)

Finally, the Debtor maintains that the Bankruptcy Court's decision is clearly erroneous because it is inconsistent: either the mortgage is invalid due to fraud and the case should be dismissed on that ground, or the mortgage is valid because there was no fraud and the case should not be dismissed on that ground. Put another way, the Debtor asserts that for OBM to continue with the foreclosure action, it demonstrates that the Appellee is, in a sense, acknowledging or adopting a valid mortgage. Thus, CBW reasons that it would not be proper for the Bankruptcy Court to base its dismissal on the simultaneous grounds of fraud and a valid foreclosure judgment.

While recognizing the thrust of this position, the Court nevertheless does not find the Bankruptcy Court's judgment to be clearly erroneous. The Debtor had the opportunity to raise

its arguments as to the validity of the mortgage in the state court proceeding related to the foreclosure. Now that the Appellee has a valid state court judgment of foreclosure in connection with the Cold Spring Harbor property, CBW cannot relitigate the validity of that judgment in the Bankruptcy Court or in this appeal. (See Tr. at 25 ("I think you hit on it but I may be too late for you, some place else, that the mortgage is invalid in its place because they entered into a transaction with somebody who had no authority to enter into it. To me, that ship has sailed.").) Rather, the Debtor is constrained to appeal that decision through proper state court channels. As Judge Grossman stated, "I'm not looking behind the judgment." (Id. at 36.)

In sum, the Court finds the evidence in the record to be sufficient to support the Bankruptcy's Court's finding of cause for dismissal pursuant to 11 U.S.C. § 1112(b), and thus the finding of bad faith was not clearly erroneous. Courts make a subjective and an objective inquiry into whether "there has been an abuse of the provisions, purpose or spirit" of the Bankruptcy Code or the relevant chapter. In re Love, 957 F.2d 1350, 1357 (7th Cir. 1992). That is precisely what Judge Grossman did here.

### III. CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED**, the court affirms the bankruptcy court's dismissal of the debtor's petition; and it is further

**ORDERED**, that the Clerk of the Court is respectfully directed to mark the case as closed.

**SO ORDERED.**
Dated: Central Islip, New York
May 24, 2012


_____/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge